UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Petitioner,<br><br>        v.<br><br>MANATT, PHELPS & PHILLIPS, LLP,<br><br>        Respondent. | 21 Misc. 466 (LGS) |

**MANATT, PHELPS & PHILLIPS, LLP'S
MEMORANDUM OF LAW IN OPPOSITION TO THE FEDERAL TRADE
COMMISSION'S MOTION TO COMPEL WITH REGARD TO A NON-PARTY
SUBPOENA**

Manatt, Phelps & Phillips, LLP
Seven Times Square
New York, NY 10036
*pro se*

## TABLE OF CONTENTS

                                                                                                                                                              **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

      1.       The FTC's Non-Party Subpoena Addressed to Manatt ......................................... 3

      2.       Counsel for a Party Moves to Quash the Subpoena............................................... 4

      3.       Manatt's Rule 45(d)(2)(B) Letter Objecting to the Subpoena .............................. 5

      4.       The Florida Hearing and the FTC's Characterization of Manatt's Objections ................................................................................................................ 5

      5.       Manatt's Production of Documents and Responses and Objections ..................... 6

      6.       The FTC's Refusal to Negotiate Search Terms And Demand That Manatt Search Emails for All Timekeepers and Their Administrative Assistants ............ 7

      7.       Further Correspondence Between Manatt and the FTC, In Which Manatt Explains that the FTC's Demand Involves Many Gigabytes of Material and Would Require Hiring a Vendor .................................................................... 8

      8.       The Status of the Underlying Litigation ................................................................ 9

ARGUMENT ............................................................................................................................ 9

I.       The Court Should Deny the Motion to Compel Because, Contrary to Custom, Law and Logic, the FTC Refuses to Negotiate Search Terms. .................................................. 9

II.      The Court Should Deny the Motion to Compel Because Email Searches of More Than 12 People's Mailboxes From Seven Years Ago Are Unduly Burdensome............. 11

III.     The Court Should Deny the Motion to Compel Because the FTC Will Not Even Discuss Cost-Shifting................................................................................................... 14

IV.     The Court Should Deny the Motion to Compel Because The Parties in *On Point Global* Likely Have Communications the FTC Seeks From Manatt.............................. 14

CONCLUSION....................................................................................................................... 15

## TABLE OF AUTHORITIES

Page

**CASES**

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017)..................................................................................12

*Cohen v. City of N.Y.*,
   No. 05 Civ. 6780 (RJS) (JCF), 2010 WL 1837782 (S.D.N.Y. May 6, 2010).........................11

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................................14

*Contant v. Bank of Am. Corp.*,
   No. 117CV03139LGSSDA, 2020 WL 3260958 (S.D.N.Y. June 17, 2020) ..........................14

*Fears v. Wilhelmina Model Agency, Inc.*,
   No. 02 Civ. 4911, 2004 WL 719185 (S.D.N.Y. April 1, 2004)..............................................11

*Federal Trade Commission v. Acquinity Interactive, LLC, et al.*,
   14-CV-60166-RNS (S.D. Fla.) ....................................................................................3, 9, 13

*Federal Trade Commission v. On Point Global LLC, et al.*,
   19-CV-25046-RNS (S.D. Fla.) ....................................................................................passim

*Koopmann v. Robert Bosch LLC*,
   No. 18-CV-4065, 2018 WL 9917679 (S.D.N.Y. May 25, 2018) ...........................................14

*Med. Components, Inc. v. Classic Med. Inc.*,
   210 F.R.D. 175 (M.D.N.C. 2002) ........................................................................................15

*Night Hawk Ltd. v. Briarpatch Ltd.*,
   L.P., No. 03 Civ.1382 RWS, 2003 WL 23018833 (S.D.N.Y. 2003)......................................11

*Romero v. Allstate Ins. Co.*,
   271 F.R.D. 96 (E.D. Pa. 2010) .............................................................................................10

*S.E.C. v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009) ....................................................................................10, 11

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*,
   No. 09-CV-3855, 2018 WL 1701944 (E.D.N.Y. Mar. 31, 2018)...........................................14

*Trusz v. UBS Realty Investors LLC*,
   No. 3:09 CV 268(JBA), 2010 WL 3583064 (D. Conn. Sep. 7, 2010)....................................10

*Tucker v. Am. Int'l Grp., Inc.*,
   281 F.R.D. 85 (D. Conn. 2012)...............................................................................12, 13, 15

*William A. Gross Constr. Assoc. Inc. v. American Mfrs. Mut. Ins. Co.*,
   256 F.R.D. 134 (S.D.N.Y. 2009) ..........................................................................................10

*Winfield v. City of New York*,
   No. 15-CV-05236 LTS KHP, 2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017).........................10

# TABLE OF AUTHORITIES
(continued)

**Page**

### OTHER AUTHORITIES

George Socha and Margaret Wolf, *Why Can't I Just Review it in Outlook?*, available at https//judicialstudies.duke.edu/wp content/uploads/2018/04JUDICATURE102.1-EDISCOVERY.pdf ...................................................................................................8

Justice Manual, 9-13.410, *Guidelines for Issuing Subpoenas to Attorneys for Information Relating to the Representation of Clients*, available at https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-13.410 ...................................................................................................13

LexisNexis, *How Many Pages in a Gigabyte?*, available at https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf ...................................................................................................12

The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties*, 22 SEDONA CONF. J. 1, 20 (2021) ...................................................................................................15

The Sedona Conference, *Conducting E-discovery After the Amendments: The Second Wave,* 10 SEDONA CONF. J. 215, 216 (2009)...................................................................................................10

### RULES

Fed. R. Civ. P. 45 ............................................................................................................. passim
Fed. R. Civ. P. 45(d)(1) ..........................................................................................3, 11, 12
Fed. R. Civ. P. 45(d)(2)(B) ..............................................................................................5
Fed. R. Civ. P. 45(d)(2)(B)(i) ..........................................................................................7
Fed. R. Civ. P. 45(d)(2)(B)(ii) .................................................................................8, 9, 14
Fed. R. Civ. P. 45(d)(3)(C)(ii) ........................................................................................14

Respondent Manatt, Phelps & Phillips, LLP ("Manatt") submits this Memorandum of Law in opposition to the motion to compel of Petitioner Federal Trade Commission ("FTC").

## PRELIMINARY STATEMENT

This motion seeks to compel a non-party law firm to search for, review and produce many gigabytes of emails even though the FTC:

- Refuses to discuss search terms;

- Demands searches of mailboxes of more than one dozen personnel for a ten-month period in 2014 and 2015;

- Will not discuss cost-shifting; and

- Apparently never sought the emails from parties to the litigation.

Any one of those positions provides ground to deny this motion. Together, they are more than sufficient.

<u>First</u>, modern electronic discovery requires negotiation of search terms, yet the FTC proclaims:

> We will not agree to search terms.

Erickson Decl., at Ex. 25, Dkt. 2-9, Attachment 1, p. 5 of 6. This Court's Individual Rules and Procedures for Civil Cases require parties to cooperate on search methodology. And numerous courts have held electronic discovery compels negotiation of search terms. Common sense underpins such rules—discovery, especially for a non-party—is not a guessing game.

Even more, the FTC claims the right to seek additional discovery if not satisfied with Manatt's search and production:

> If our review of your subpoena response indicates there are additional custodians who are not identified, Manatt would then search those custodians for the same time period.

-1-

*Id*.  Thus, Manatt should guess search terms—without input from the FTC—search for, review and produce documents based on those terms, and then re-do the work if the FTC deems Manatt's searches insufficient.

<u>Second</u>, the FTC ignores burden.  For the ten-month period for which the FTC demands documents, one attorney custodian had 1.5 gigabytes of emails.  Another had 2.5.  A gigabyte of emails is approximately 100,000 pages.  Multiplied by twelve, the potential volume places an undue burden on a non-party.  That is especially true when the non-party is a law firm, as communications have to be reviewed for privilege.  Even more, the FTC demands that along with immediate production of documents, "Manatt must then immediately . . . provide a privilege log."  *Id*.

In what the FTC describes as an effort to limit burden, the agency demands Manatt search emails from seven years ago of:

> any timekeeper identified in these billing records (as well as Karen McQuade, Caroline Grant, and any other administrative professional who assisted the identified timekeepers with scheduling or their correspondence or who corresponded with anyone who made the payment identified in Manatt's production as MPP0000032).

*Id*.  That includes at least one dozen people, and potentially far more.  This Court's Individual Rules and Procedures limit ESI discovery—even among parties—to ten custodians and the previous five years, absent court order.  The FTC claims to have limited burden by excluding internal law firm communications, emails with an *On Point Global* defendant and another individual.  But those limitations do not reduce Manatt's burden since those documents must be eliminated from potentially millions of pages of emails.  To be sure, AI can assist searches, but

that requires expensive vendors and attorney supervision. And of course, it requires search terms, which the FTC refuses to discuss.

<u>Third</u>, contrary to Rule 45, and many courts in this circuit, the FTC refuses even to discuss cost-shifting.

<u>Fourth</u>, the documents the FTC seeks from non-party Manatt are likely in possession of parties. The FTC wrote that it had requested these documents from one party, but it apparently never followed up on the request. And it is not clear whether the FTC requested the documents from the party most likely to have them.

At bottom, the Court should deny the FTC's motion because the FTC is ignoring the requirement of Rule 45(d)(1) that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

## STATEMENT OF FACTS

### 1. **The FTC's Non-Party Subpoena Addressed to Manatt**

Upon request from the FTC, Manatt agreed to accept service of a non-party subpoena duces tecum in connection with *Federal Trade Commission v. On Point Global LLC, et al.*, 19-CV-25046-RNS (S.D. Fla.) ("*On Point Global*"). Manatt is not a party to *On Point Global*, and does not represent a party. Instead, seven years ago, Manatt represented a defendant in *On Point Global*, Burton Katz, in settlement of a different FTC action, *Federal Trade Commission v. Acquinity Interactive, LLC, et al.*, 14-CV-60166-RNS (S.D. Fla.).

The Subpoena seeks six categories of documents: (1) retainer agreements between Manatt and any *On Point Global* defendant; (2) documents sufficient to show payment or compensation from or for the benefit of defendant Katz; (3) documents sufficient to show

payment or compensation from or for the benefit of Robert Zangrillo, also a defendant in *On Point Global*; (4) all communications with Zangrillo or any person working for or on his behalf; (5) all communications regarding payment of the stipulated judgment in the 2014 FTC action against Katz; and (6) documents sufficient to identify information about the payment of the stipulated judgment in the 2014 FTC action against Katz. A copy of the subpoena is attached as Exhibit 14 to the Erickson Declaration, Dkt. 2-4.

On April 2, 2021, Manatt and the FTC discussed the subpoena. Manatt said it needed more time to assess the volume of potentially responsive documents. The FTC requested production by the April 7th return date and suggested Manatt focus on requests Two, Three and Six, the requests that concern information about payments to Manatt and payment of the judgment. The parties agreed to speak again on April 7th. *See* Blum Decl. at ¶ 2.

### 2.     Counsel for a Party Moves to Quash the Subpoena

That same day, Boies Schiller Flexner LLP ("Boies Schiller"), counsel for Zangrillo and entities apparently affiliated with him (defendants in *On Point Global*) copied Manatt on a letter to the FTC that objected to the subpoena on relevancy grounds. *See* Erickson Decl., at Ex. 15, Dkt. 2-5. A few days later, Boies Schiller asked the FTC to extend Manatt's time to respond until the Florida court had resolved Boies Schiller's objections to the subpoena. *See* Blum Decl., at Ex. A. The FTC refused. *See* Blum Decl., at Ex. B.

On April 7, 2021, the return date of the subpoena, Manatt and the FTC spoke. Manatt said that it would be sending the FTC a Rule 45 letter objecting to the subpoena. Manatt also said it would await the ruling on the party's motion before producing any documents. *See* Blum Decl. at ¶ 3. The FTC responded that it would seek an order of contempt if Manatt did not

immediately produce documents if the Florida court denied Boies Schiller's motion to quash. *See* Erickson Decl., at Ex. 22, Dkt. 2-9, p. 2 of 3.

### 3. Manatt's Rule 45(d)(2)(B) Letter Objecting to the Subpoena

The same day, Manatt wrote the FTC, invoking Rule 45(d)(2)(B) and objecting to the subpoena. Manatt's Rule 45 Letter, dated April 7, 2021 is attached to the Erickson Declaration at Ex. 16, Dkt. 2-5. The letter objected on the ground that a party had moved to quash the subpoena and Manatt would not "short-circuit judicial process" and produce documents while the motion was *sub judice*. In addition, the letter noted that many of the requested documents were protected by the attorney-client privilege. It also noted that some of the FTC's requests were unduly burdensome. The next day, the FTC responded that the FTC "believe[s] the Zangrillo defendants' objections to be baseless," and that "[the FTC] will seek immediate production following the April 22nd hearing." Erickson Decl., at Ex. 17, Dkt. 2-5, p. 2 of 2.

### 4. The Florida Hearing and the FTC's Characterization of Manatt's Objections

On April 22, 2021, parties to *On Point Global* appeared before Magistrate Judge Torres of the Southern District of Florida. The next day, the FTC emailed Manatt to say that Judge Torres ruled that he would enforce the subpoena. According to the FTC, Manatt's "response to the subpoena is now overdue." Erickson Decl., at Ex. 19, Dkt. 2-7.

At the April 22 hearing in the Southern District of Florida, Magistrate Judge Torres asked the FTC about Manatt's subpoena response:

> THE COURT: Okay. And did Manatt file objections or only the Defendant?
>
> FTC COUNSEL: Well, initially, Manatt was not objecting to the subpoena. They have since sent the FTC a letter stating that they would not respond until the Court ruled, essentially, on the Defendants' objection.
>
> THE COURT: Okay.

> FTC COUNSEL: They also raised in a pretty cursory fashion -- they just asserted that it would be burdensome for them to respond and that it could invade privileges. They didn't provide any information about that. The FTC sent a responsive letter urging them to, if they wished to make any objections on their own behalf, to make those known to the Court at or before this hearing [Indiscernible] this hearing or to file objections previously. To my knowledge, they haven't done that. And I don't believe that they're here. So I don't know if they intend to try to raise any objections on their own behalf.

Erickson Decl., at Ex. 18, Dkt. 2-6, p. 11–12 of 60, Tr. 11:16 –12:8.

### 5.  Manatt's Production of Documents and Responses and Objections

The next business day after receiving the transcript from the FTC, Manatt produced responsive documents and served Responses and Objections to the Subpoena. Erickson Decl., at Ex. 20, Dkt. 2-8, pp. 1–7. The documents included: (1) engagement letters; (2) a spreadsheet reflecting payments to Manatt from or for the benefit of Katz; and (3) confirmations about payment of the stipulated judgment in the 2014 FTC action against Katz. Erickson Decl., at Ex. 5, Dkt. 2-2 (containing an excerpt of the production).

Manatt's Responses and Objections made clear that Manatt was producing documents responsive to document requests One, Two and Six, and that Manatt had no documents responsive to request Three (other than the documents Manatt agreed to produce in response to request Six), which sought documents sufficient to show any payment or compensation on behalf of Zangrillo. Manatt objected on the basis of burden to requests Four and Five, which sought all communications with Zangrillo and persons working for him, and all communications regarding payment of the 2014 judgment.

The next day, the FTC wrote that Manatt's production was "deficient" and threatened to seek "appropriate and immediate orders against the firm" if Manatt did not "complete its production of documents expeditiously." Erickson Decl., at Ex. 21, Dkt. 2-9, pp. 1–2.

Manatt responded that the firm had complied with Rule 45, and that the FTC had inaccurately told Magistrate Judge Torres that Manatt had not objected to the subpoena. Erickson Decl., at Ex. 22, Dkt. 2-9. The letter offered to discuss Manatt's objections. *Id*. at p. 3 of 3. Manatt noted that Rule 45(d)(2)(B)(i) requires a motion to compel be made in "the district where compliance is required," in this case the Southern District of New York. *Id.* at p. 2 of 3.

> 6. **The FTC's Refusal to Negotiate Search Terms And Demand That Manatt Search Emails for All Timekeepers and Their Administrative Assistants**

Manatt and the FTC conferred by telephone, and Manatt asked whether the FTC had sought from the parties the documents it was seeking from Manatt. Blum Decl. at ¶ 4. Manatt also asked the FTC about search terms. *Id.*

In an email the next day, May 6, 2021, the FTC announced:

> We will not agree to search terms.

Erickson Decl., at Ex. 25, Dkt. 2-9, Attachment 1, p. 5 of 6.

Instead of agreeing to—or even discussing—search terms, the FTC demanded emails of: (1) any timekeeper identified in billing records; (2) two named administrative personnel; and (3) "any other administrative personnel who assisted the identified timekeepers with scheduling or their correspondence or who corresponded with anyone who made the payment identified in Manatt's production as MPP0000032." *Id*. The FTC also required that Manatt "immediately produce responsive documents, and provide a privilege log . . . ." *Id*. Further, the FTC demanded the right to seek additional discovery:

> If our review of your subpoena response indicates there are additional custodians who are not identified, Manatt would then search those custodians for the same time period.

*Id*. By way of compromise, the FTC proposed to shorten the time period of the email searches to ten months during 2014 and 2015. *Id*.

### 7. Further Correspondence Between Manatt and the FTC, In Which Manatt Explains that the FTC's Demand Involves Many Gigabytes of Material and Would Require Hiring a Vendor

Next, the FTC demanded that Manatt "explain in detail how the custodians organize their communications and whether you have taken any steps to identify the volume of de-duplicated documents." Erickson Decl., at Ex. 25, Dkt. 2-9, pp. 1–2 of 6. The letter proposed reducing burden by agreeing that Manatt need not produce internal firm communications, or communications only with Katz or another individual. *Id.* With those limitations, the FTC again demanded emails for all of the approximately one dozen individuals in its May 6 email. *Id.*

In response, Manatt explained that, in Outlook, emails cannot be de-duplicated, internal emails cannot be eliminated, and even simple word searches are error-prone. Erickson Decl., at Ex. 27, Dkt. 2-9 at p. 1 of 2. Manatt cited an article that explains why document review cannot be accomplished in Outlook. *Id.*[1] Therefore, Manatt explained, the FTC's proposal required exporting many gigabytes of emails to a vendor's platform. *Id.* Manatt also noted the FTC's unwillingness to negotiate search terms meant Manatt would have to devise terms in a case which it is not a party, and then perform a costly and cumbersome review, with no assurance the FTC would not seek further, repeated reviews and productions. *Id.* at p. 2 of 2. Manatt's letter also noted that the FTC was demanding "communications Manatt had with a non-client, Robert Zangrillo (and his representatives)" without identifying the representatives, whom Manatt does not know. *Id.* Finally, Manatt invited compromise:

> If the FTC is willing to discuss paying the cost of a vendor processing and hosting the material, as contemplated by Rule 45(d)(2)(B)(ii), and is willing to negotiate search terms, we are willing to continue discussions.

---

[1] *See* George Socha and Margaret Wolf, *Why Can't I Just Review it in Outlook?,* available at https//judicialstudies.duke.edu/wp content/uploads/2018/04JUDICATURE102.1-EDISCOVERY.pdf.

*Id.*  The FTC responded the same day, asking whether Manatt believed a document review platform was needed, and Manatt responded affirmatively.  Erickson Decl., at Ex. 29, Dkt. 2-9, p. 1 of 2.  Next, the FTC requested a business records certification.  Erickson Decl., at Ex. 30, Dkt. 2-9, p. 2 of 2.  Without waiting for a response to that request, the agency filed its motion.

### 8. The Status of the Underlying Litigation

Discovery in the underlying *On Point Global* action concluded on May 3.  *See* First Amended Scheduling Order and Order Of Referral To Mediation, *Federal Trade Commission v. On Point Global LLC, et al*., 19-CV-25046-RNS (S.D. Fla.) (Dkt. 324).  On that day, the FTC filed a "Notice of Ongoing Discovery Dispute."  *Id.* (Dkt. 383).  The parties' briefing on summary judgment is partially complete.  *Id.* (Dkt. 391) (reflecting that two summary judgment motions have been filed, oppositions have been filed on the first and are due June 28, 2021 on the second, and replies are due June 28, 2021 on the first and July 12, 2021 on the second).

As for the *Acquinity* action—for which the FTC claims it needs Manatt's documents—the parties completed briefing on the Order to Show Cause regarding whether Burton Katz and 12 *On Point* Corporate Defendants should be held in contempt for violating the 2014 order against Katz.  *See Federal Trade Commission v. Acquinity Interactive, LLC et al*., 14-CV-60166-RNS (S.D. Fla.) (Dkt. 168) (FTC's Reply Brief on the Order to Show Cause was filed May 21, 2021).

### ARGUMENT

### I. The Court Should Deny the Motion to Compel Because, Contrary to Custom, Law and Logic, the FTC Refuses to Negotiate Search Terms.

The FTC's brief fails to mention its refusal to discuss search terms, even though that is the core of this disagreement.  Absent agreed-upon search terms, meaningful and efficient e-discovery cannot occur.

Courts recognize "the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other electronically stored information ("ESI")." *William A. Gross Constr. Assoc. Inc. v. American Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009); *see also Winfield v. City of New York*, No. 15-CV-05236 LTS KHP, 2017 WL 5664852, at *7 (S.D.N.Y. Nov. 27, 2017) ("Courts have recognized that keyword searches used to search for and collect documents for review must be carefully crafted.") (internal citations omitted); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010) ("Among the items about which the court expects counsel to reach practical agreement without the court having to micro-manage e-discovery are search terms, date ranges, key players and the like.") (quoting *Trusz v. UBS Realty Investors LLC*, No. 3:09 CV 268(JBA), 2010 WL 3583064, at *4–5 (D. Conn. Sept. 7, 2010) (opinion vacated in part)); *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (finding "[t]he SEC's blanket refusal to negotiate a workable search protocol" to be "patently unreasonable.").

This Court's Individual Rules and Procedures for Civil Cases are instructive in this regard.  Pursuant to Rule II(A)(3), parties "requesting ESI discovery and parties responding to such requests are expected to cooperate in the development of search methodology and criteria to achieve proportionality in ESI discovery, including appropriate use of computer-assisted search methodology."

In this case, the FTC has refused to cooperate in the most basic ESI search methodology—the negotiation of search terms.  In connection with electronic discovery, "cooperation among parties in discovery has emerged as a decisive mandate," with particular emphasis on collaboration regarding search terms  *See* The Sedona Conference, *Conducting E-discovery After the Amendments: The Second Wave,* 10 SEDONA CONF. J. 215, 216 (2009).

Moreover, the FTC's position is particularly unreasonable because Manatt is a non-party. Manatt is not familiar with the parties, claims, or issues in *On Point Global*. The illogic of the FTC's position is highlighted by the discovery the FTC demands. For example, the FTC demands Manatt search for communications from "Zangrillo (and his representatives)." Erickson Decl., at Ex. 26, Dkt. 2-9, at p. 1 of 3. Yet Manatt does not know Zangrillo's "representatives." In addition, Zangrillo is apparently affiliated with multiple companies; the *On Point Global* docket reflects six entities represented by Zangrillo's counsel.

Refusing to negotiate search terms for electronic discovery is unreasonable in modern civil litigation. And "like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *S.E.C. v. Collins & Aikman Corp.,* 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

## II. The Court Should Deny the Motion to Compel Because Email Searches of More Than 12 People's Mailboxes From Seven Years Ago Are Unduly Burdensome.

Rule 45 requires "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts in this district recognize that "special weight should be given to the burden on non-parties of producing documents to parties involved in litigation." *Cohen v. City of N.Y.*, No. 05 Civ. 6780 (RJS) (JCF), 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010) (internal quotations and citations omitted); *see also Fears v. Wilhelmina Model Agency, Inc.,* No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty."); *Night Hawk Ltd. v. Briarpatch Ltd.*, L.P., No. 03 Civ.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. 2003) ("The status . . . as a non-

party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience").² "Within this Circuit, courts have held nonparty status to be a *significant* factor in determining whether discovery is unduly burdensome." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (internal citations added) (emphasis added).

In determining whether a subpoena subjects a non-party to undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).

Here too, this Court's Individual Rules and Procedures for Civil Cases are instructive. Absent court order, a party may not seek ESI from more than ten custodians or created more than five years ago. The FTC's demands exceed those constraints, demanding non-party Manatt search and review emails of at least one dozen custodians: seven timekeepers, two named administrative professionals, and "any other administrative personnel who assisted the identified timekeepers." Erickson Decl., at Ex. 23, Dkt. 2-9, p. 1 of 2.³ The FTC's proposal could require a search of almost *two million* pages of emails.⁴ Further, not only the volume makes the request

---

² The FTC asserts Manatt must prove burden, but the cases it cites for the proposition involve party discovery. Rule 45(d)(1) requires the <u>issuing</u> party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Cf. Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) ("[C]ourts have considered the fact that discovery is being sought from a third or non-party . . . [to] weigh[] against permitting discovery."). In any event, Manatt's opposition sets forth the time and expense required to comply with the requests for emails. *See* Blum Decl. ¶¶ 6–10.
³ Each of the timekeepers likely had an administrative assistant, although an assistant may have worked with multiple timekeepers.
⁴ LexisNexis estimates a gigabyte of emails is 100,000 pages. *See* LexisNexis, *How Many Pages in a Gigabyte?*, available at

unduly burdensome, but the nature of these documents makes a search and review significantly more time-consuming; most of the custodians are attorneys and all are law-firm personnel.[5] Thus, the emails would include attorney-client privileged material or attorney work product. In addition, as Manatt explained to the FTC, document review cannot be conducted in Outlook.

Finally, even after briefing, it is unclear why the FTC needs these email searches. Discovery in *On Point Global* has closed, and briefing on summary judgment is underway. *See* Statement of Facts, Section 8, *supra*, at p. 9. The FTC's brief here claims the emails could be relevant to an Order to Show Cause in a different action: *Federal Trade Commission v. Acquinity Interactive, LLC, et al.*, 14-CV-60166-RNS (S.D. Fla.). But that Order to Show Case is fully briefed. *See id.* Accordingly, the FTC's motion to compel should be denied because the burden imposed on Manatt cannot be justified under the circumstances of the case. *See Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 91 (D. Conn. 2012) ("The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on *whether those burdens and costs can be justified in the circumstances of the case.*") (internal citations omitted) (emphasis added).

---

https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf. *See* Blum Decl. at ¶ 8–11.

[5] Notably, the Department of Justice guidelines differentiate subpoenas addressed to law firms: "Because of the potential effects upon an attorney-client relationship that may result from the issuance of a subpoena to an attorney for information relating to the attorney's representation of a client, the Department exercises close control over such subpoenas. . ." Justice Manual, 9-13.410, *Guidelines for Issuing Subpoenas to Attorneys for Information Relating to the Representation of Clients*, available at https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-13.410.

**III.     The Court Should Deny the Motion to Compel Because the FTC Will Not Even Discuss Cost-Shifting.**

Rule 45(d)(2)(B)(ii) protects "a person who is neither a party nor a party's officer from significant expense resulting from compliance" with a non-party subpoena. And a court may "ensure[ ] that the subpoenaed person will be reasonably compensated" for its expenses incurred complying with a subpoena. Fed. R. Civ. P. 45(d)(3)(C)(ii). In fact, "Courts have deemed [Rule 45(d)(2)(B)(ii)] 'to make cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena.'" *Koopmann v. Robert Bosch LLC,* No. 18-CV-4065, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) (quoting *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc*., No. 09-CV-3855, 2018 WL 1701944, at *3 (E.D.N.Y. Mar. 31, 2018) (internal citations omitted)); *see also Contant v. Bank of Am. Corp*., No. 117CV03139LGSSDA, 2020 WL 3260958, at *3 (S.D.N.Y. June 17, 2020) ("Cost-shifting is particularly appropriate in the context of subpoenas since Rule 45 directs courts to minimize the burden on non-parties.") (internal citations omitted).

Responding to the FTC's requests will cause Manatt to incur expense because Manatt will need to engage a vendor to process and host the many gigabytes the FTC demands Manatt search. But the FTC is unwilling even to discuss cost-shifting.

**IV.     The Court Should Deny the Motion to Compel Because The Parties in *On Point Global* Likely Have Communications the FTC Seeks From Manatt.**

Requesting broad and burdensome search and review from a non-party is inappropriate when the communications are likely available from a party. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp*., 169 F.R.D. 44, 49, 52 (S.D.N.Y. 1996) (quashing subpoena and stating that non-parties "should not be subject to the same burden of production that a party to the underlying litigation is subject"). "It is a well-established principle that the burdens of discovery should fall

on the parties to the litigation instead of on any non-party." The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties*, 22 SEDONA CONF. J. 1, 20 (2021); *see also Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) ("The current generally prevailing view is that the Court may first consider whether information should be obtained . . . from a party, as opposed to from a non-party[.]") (quoting *Med. Components, Inc. v. Classic Med. Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002)).

Here, it is not clear the FTC sought these communications from Zangrillo, a party in *On Point Global*. In addition, Manatt told the FTC that the former Manatt attorney who represented Katz while at Manatt transferred to Katz's current counsel, BakerHostetler, Katz's files when she left Manatt for BakerHostetler. The FTC said it never received the emails from Katz's counsel. *See* Erickson Decl., at Ex. 25, Dkt. 2-9, p. 2 of 6. But the FTC apparently never followed up on its document demands or asked Katz's counsel to search BakerHostetler's files.

## CONCLUSION

For these reasons, this Court should deny the FTC's motion to compel.

Dated: June 21, 2021
       New York, New York

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP, *pro se*

By:  /s/ Ronald G. Blum
    Ronald G. Blum
    Rebecca Kimmel
    7 Times Square
    New York, New York 10036
    Telephone: (212) 790-4500
    Email: rblum@manatt.com
    Email: rkimmel@manatt.com

*Attorneys for Non-Party Manatt, Phelps & Phillips, LLP, pro se*